IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| MICHAEL A. COX, Attorney General | ) | |
| of the State of Michigan, ex rel, | ) | |
| MICHIGAN DEPARTMENT OF ENVIRONMENTAL | ) | |
| QUALITY, and STEVEN CHESTER, Director | ) | |
| of the Department of Environmental | ) | |
| Quality, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:88-cv-00097 |
| | ) | |
| v. | ) | Hon. Douglas W. Hillman |
| | ) | |
| FMB--FIRST MICHIGAN BANK, or | ) | |
| ITS SUCCESSOR, AS TRUSTEE OF | ) | |
| THE MARY A. WINDOLPH TRUST, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS

INDEX OF APPENDICES ........................................................ iv

I.     JURISDICTION AND VENUE ........................................... 3

II.    DEFINITIONS ........................................................ 3

III.   PARTIES BOUND ..................................................... 6

IV.   NOTICE OBLIGATIONS ............................................... 7

V.    COMPLIANCE REQUIREMENTS ...................................... 8

     A.     Closure Requirements .............................................. 8

     B.     Financial Requirements ............................................ 8

     C.     Groundwater Monitoring .......................................... 10

VI.   CIVIL PENALTY ..................................................... 10

VII.  STIPULATED PENALTIES ............................................ 11

VIII. SUBMISSIONS ....................................................... 13

IX.   ACCESS TO THE KHI FACILITY AND SAMPLING ......................... 15

X.    REPORTING ........................................................ 16

XI.   MODIFICATION ..................................................... 16

XII.  DISPUTE RESOLUTION ............................................... 16

XIII. FORCE MAJEURE .................................................... 19

XIV. COVENANT NOT TO SUE BY PLAINTIFFS .............................. 22

XV.  RESERVATION OF RIGHTS BY PLAINTIFFS ............................. 23

XVI. COVENANT NOT TO SUE BY SETTLING DEFENDANT .................... 24

XVII. CONTRIBUTION PROTECTION ......................................... 25

XVIII. SEVERABILITY ................................................. 25

XIX. PUBLIC COMMENT ................................................. 25

XX.  CONTINUING JURISDICTION OF THE COURT ............................ 26

XXI.  INTEGRATION / APPENDICES ...................................... 26

XXII. TERMINATION ................................................... 26

# INDEX OF APPENDICES

| Appendix | Description |
|---|---|
| A | Operation and Maintenance Plan and Compliance Monitoring Contingency Plan for the KHI Facility |
| B | Legal Description of the KHI Facility |
| C | Agreement and Covenant Not to Sue |
| D | Restrictive Covenant |
| E | Environmental Escrow Agreement |

## CONSENT DECREE

WHEREAS, on February 17, 1988, Plaintiff, United States of America, on behalf of the United States Environmental Protection Agency ("U.S. EPA"), filed its Complaint in this action against Mary A. Windolph and FMB--First Michigan Bank, or its successor, as Trustee of the Herman J. Windolph Trust, and on May 2, 1988 filed its First Amended Complaint, against FMB--First Michigan Bank, or its successor, as Trustee of the Mary A. Windolph Trust ("Settling Defendant") pursuant to Sections 3008(a) and (g) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6928(a) and (g), alleging violations of Sections 3005(a) and 3005(e)(2) of RCRA, 42 U.S.C. §§ 6925(a) and (e)(2), and regulations promulgated thereunder, and requesting assessment of civil penalties and permanent injunctive relief at the KHI, Inc. facility in Holland Michigan, formerly known as Kent-Holland Die Casting & Plating, Inc. (the "KHI Facility") owned by the Mary A. Windolph Trust;

WHEREAS, on October 30, 1986, the Administrator of U.S. EPA granted final authorization to the State of Michigan to administer a hazardous waste program in lieu of the Federal program. As a result, generators, transporters, and treatment, storage, or disposal facilities are regulated under the provisions of the Michigan Administrative Code in lieu of those portions of RCRA for which the State is authorized. Section 3008 of RCRA, 42 U.S.C. § 6928, provides that U.S. EPA may enforce state regulations in those states authorized to administer a hazardous waste program;

WHEREAS, the State of Michigan (the "State") filed a Motion to Intervene on May 5, 1988, which was granted on June 8, 1988, which resulted in the filing of a Complaint in Intervention (hereinafter all references to the "Complaints" include the State's Complaint in Intervention);

WHEREAS, Settling Defendant filed its Answers on August 5, 1988;

WHEREAS, on July 2, 1990, the Court issued an Order and Opinion Granting Plaintiffs' Motion for Summary Judgment striking Defendant's Affirmative Defenses;

WHEREAS, Settling Defendant has implemented and completed the closure and corrective action requirements for the KHI Facility in accordance with the requirements of RCRA and Part 111 of the Michigan Natural Resources and Environmental Protection Act ("NREPA") and subject to the oversight and approval of U.S. EPA and the Michigan Department of Environmental Quality ("MDEQ"). The remaining post-closure related activities are set forth in the Operation and Maintenance Plan and the Compliance Monitoring Contingency Plan ("Work Plans"), attached at Appendix A;

WHEREAS, Settling Defendant has submitted to U.S. EPA and MDEQ a certification that the KHI Facility has been closed in accordance with RCRA and Part 111 of NREPA, as required by 40 C.F.R. § 265.115, and the MDEQ has approved the closure certification.

WHEREAS, Huntington National Bank is the successor by merger to FMB--First Michigan Bank;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of testimony, before adjudication of the merits, without this Consent Decree constituting an admission by Settling Defendant of liability for any of the allegations set forth in the Complaints or constituting evidence of the same, and upon the consent of the Parties to this Consent Decree, it is hereby ORDERED, ADJUDGED, AND

DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Parties and the subject matter of this action pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and 28 U.S.C. §§ 1331, 1345, and 1355. The Complaints state claims upon which the Court may grant relief against Settling Defendant, pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a). Venue is proper pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and 28 U.S.C. § 1391(b).

## II. DEFINITIONS

2.    Unless otherwise stated, all terms used in this Consent Decree shall have the same meaning as used in RCRA, 42 U.S.C. §§ 6901-6992k, and the regulations promulgated thereunder, 40 C.F.R. Parts 260 through 271; CERCLA, 42 U.S.C. §§ 6901-6975, and the regulations promulgated thereunder; and Part 111 of NREPA, 1994 P.A. 451, as amended, Mich. Comp. Laws § 324.11101 et seq., Mich. Stat. Ann. § 13A.11101 et seq. The interim status requirements codified at 40 C.F.R. Part 265 have been adopted by reference in Michigan Administrative Code ("Mich. Admin. Code"), r 299. 9502 and r 299.11003(l)(p) and (q). Hereafter, only the Code of Federal Regulations citation is provided for the interim status requirements adopted by reference in the Mich. Admin. Code.

a.    "ADW, L.L.C." shall mean a Michigan limited liability company whose address is 44 East 8th Street, Suite 510, Holland, Michigan 49423, which intends to purchase the KHI Facility from the Settling Defendant.

b.    "Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of a conflict between this Consent Decree and any appendix, this

3

Consent Decree shall control.

     c.     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675, and the regulations promulgated thereunder.

     d.     "Days" shall mean calendar days.

     e.     "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

     f.     "Escrowed Funds" shall mean the funds held in escrow pursuant to Paragraph 8 of this Consent Decree.

     g.     "Existing Contamination" shall mean:

          i.     any Waste Material present or existing on or under the KHI Facility as of the effective date of this Agreement;

          ii.     any Waste Material that migrated from the KHI Facility prior to the effective date of this Agreement; and

          iii.     any Waste Material presently at the KHI Facility that migrates onto or under or from the KHI Facility after the effective date of this Agreement.

     h.     "KHI Facility" shall mean the facility, as defined at 40 C.F.R. § 260.10 and Mich. Admin. Code r. 299.9103(q), owned by the Trust at 582 East Lakewood Blvd., Holland, Michigan, also known as the Kent-Holland facility, and encompassing approximately seven acres, more or less, including the areas in which Waste Material has come to be located. The legal description of the KHI Facility is attached at Appendix B.

i.     "MDEQ" shall mean the Michigan Department of Environmental Quality. The State's Complaint was filed on behalf of the Michigan Department of Natural Resources ("MDNR"); however, since that date, the pertinent duties and responsibilities of the MDNR, have been transferred by executive order of the Governor of Michigan to the Michigan Department of Environmental Quality.  Executive Order 1995-18.

j.     "NREPA" shall mean the Michigan Natural Resources and Environmental Protection Act, 1994 PA 451, as amended, Mich. Comp. Laws § 101 et seq.

k.     "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper or lower case letter.

l.     "Parties" shall mean the United States, the State, and the Settling Defendant.

m.     "Plaintiffs" shall mean the United States of America and the State of Michigan.

n.     "RCRA" shall mean the Resource Conservation and Recovery Act, as amended, 42 U.S.C. §§ 6901-6992k, and the regulations promulgated thereunder.

o.     "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

p.     "Settling Defendant" shall mean Huntington National Bank, as the successor to FMB--First Michigan Bank, as trustee of the Mary A. Windolph Trust.

q.     "State" shall mean the State of Michigan, including its departments, agencies, and instrumentalities.

r.     "Trust" shall mean the Mary A. Windolph Trust.

s.     "U.S. EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

t.     "United States" shall mean the United States of America, acting on behalf of U.S. EPA.

u.     "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any "pollutant or contaminant" under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous substance" under Section 20101(1)(t) of the NREPA, Mich. Comp. Laws § 324.20101(1)(t).

v.     "Work" shall mean the remaining post-closure related activities set forth in the Work Plans.

w.     "Work Plans" shall mean the Operation and Maintenance Plan and the Compliance Monitoring Contingency Plan, attached at Appendix A.

### III. **PARTIES BOUND**

3.     This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendant and its successors and assigns. Settling Defendant enters into this Consent Decree solely as the trustee of the Trust, and the Settling Defendant's obligations are limited to overseeing and applying the Trust's assets to meet the requirements under this Consent Decree. Any change in ownership or corporate status of Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree as trustee for the Trust.

4.     If the Settling Defendant proposes to sell or transfer the KHI Facility, or any

6

portion of it, or proposes to disburse any Trust assets to the beneficiaries of the Trust, all of the obligations of Settling Defendant under the Consent Decree shall continue until this Consent Decree is terminated as provided in Section XXII (Termination). Notwithstanding the foregoing, the Plaintiffs consent to the sale of the KHI Facility to ADW, L.L.C., pursuant to the Agreement and Covenant Not to Sue, which will be subject to public comment, and is attached at Appendix C.

## IV. **NOTICE OBLIGATIONS**

5.     Prior to any sale or transfer of the KHI Facility, or any portion of it, Settling Defendant shall provide a copy of this Consent Decree to any purchaser or transferee of the KHI Facility. Upon its execution of this Consent Decree, Settling Defendant shall also provide a copy of the Consent Decree to the beneficiaries of the Trust. The Settling Defendant shall also notify U.S. EPA, MDEQ, the Assistant Attorney General for the State, the United States Attorney for the Western District of Michigan, and the Chief of the Environmental Enforcement Section, Environment and Natural Resources Division, U.S. Department of Justice, in writing, at least thirty (30) days in advance of any proposed sale, transfer, or disbursement of Trust assets to the beneficiaries of the Trust at the addresses set forth in Section VIII (Submissions).

6.     Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and

subcontractors perform the Work contemplated herein in accordance with this Consent Decree. This Section does not relieve Settling Defendant of its obligations to comply with notice requirements under RCRA or equivalent State provisions, including, without limitation, 40 C.F.R. §§ 265.12 and 270.72 and Mich. Admin. Code r. 299.9501 and r 299.9513.

## V. COMPLIANCE REQUIREMENTS

A.     Closure Requirements.

7.     Within twenty-one (21) days of the sale of the KHI Facility to ADW, L.L.C., Settling Defendant shall record, or cause to be recorded, the Restrictive Covenant, attached at Appendix D, with the Register of Deeds in the Recorder's Office for Ottawa County, Michigan. If the sale of the KHI Facility does not occur within sixty (60) days after entry of this Consent Decree, the Settling Defendant shall submit to the State a proposed Restrictive Covenant to be recorded in lieu of the Restrictive Covenant attached at Exhibit D, and shall record, or cause to be recorded, the Restrictive Covenant with the Register of Deeds in the Recorder's Office for Ottawa County, Michigan, within 21 days after the State approves the Restrictive Covenant.

B.     Financial Requirements.

8.     The principal asset of the Trust is the real property upon which the KHI Facility is located at 582 East Lakewood Boulevard, Holland, Michigan. The Trust's other asset is the potential right to a partial refund of federal estate taxes.

a.     Within seven (7) days after the sale of the real property, and/or receipt of any tax refund, whichever comes first, the Settling Defendant may pay its previously incurred and unpaid expenses related to the closure of the facility, entry of this Consent Decree, application for estate tax refunds, and sale of the real property, including taxes related to the sale

8

of the real property, and shall deposit the net proceeds ("Net Proceeds") into the Environmental Escrow Account ("Escrow Account") created by the Environmental Escrow Agreement, attached at Appendix E, as financial assurance for the performance of the obligations under this Consent Decree, up to a maximum of $350,000 (the "Initial Deposit"). All deposits into the Escrow Account are "Escrowed Funds."

      b.    The minimum amount of the Initial Deposit into the Escrow Account from the Net Proceeds shall be $113,000, or the gross amount of any tax refund if that amount is less than $113,000 and the property is not yet sold.

      c.    If the Initial Deposit to the Escrow Account is less than $113,000, and the Trust subsequently receives sale or tax refund proceeds, within seven (7) days, the Settling Defendant shall deposit into the Escrow Account: (1) the lesser of the total amount of the gross proceeds or the amount of the gross proceeds necessary to bring the total amount of the deposits to $113,000; and (2) any Net Proceeds, subject to the $350,000 limit on the aggregate amount of deposits to the Escrow Account.

      d.    If the Initial Deposit to the Escrow Account is equal to or more than $113,000, but less than $350,000, and the Trust subsequently receives property sale or tax refund proceeds, within seven (7) days, the Settling Defendant shall deposit into the Escrow Account any Net Proceeds, subject to the $350,000 limit on the aggregate amount of deposits to the Escrow Account.

      e.    In order to confirm that the Net Proceeds were placed in the Escrow Account, the Settling Defendant shall provide to Plaintiffs a written description of the sale or tax refund proceeds and the previously incurred and unpaid expenses, and, if requested by Plaintiffs,

reasonable supporting documentation.

f.      If the Trust has or receives any property sale or tax refund proceeds after a total of $350,000 has been deposited into the Escrow Account, the Settling Defendant may retain the proceeds and disburse them to the Trust beneficiaries after providing notice as required by Paragraph 5.  The Settling Defendant must adhere to all of its fiduciary obligations arising from the Environmental Escrow Agreement.

9.      The Settling Defendant may only disburse the Escrowed Funds to pay the necessary expenses to perform its obligations under this Consent Decree, including only those administrative and legal expenses for services performed after entry of this Consent Decree, in accordance with the provisions of 2.1-2.5 and 4.12 of the Environmental Escrow Agreement.

10.      Upon termination of this Consent Decree, Settling Defendant may disburse to the beneficiaries of the Trust any Escrowed Funds from the Escrow Account deposited into the Trust upon termination of the Consent Decree.

C.      Groundwater Monitoring.

11.      Settling Defendant shall implement the Work Plans according to the terms and schedules described therein.

## VI. CIVIL PENALTY

12.      Within sixty (60) days after the sale of the real property, Settling Defendant shall pay from the Escrowed Funds a civil penalty of $10,000.  Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Settling Defendant, following lodging of this Consent Decree, by the Financial Litigation Unit of the United States Attorney's Office for the Western District of

Michigan. At the time of payment, Settling Defendant shall simultaneously send written notice of payment and a copy of any transmittal documentation (which should reference DOJ case number 90-7-1-433 and the civil action number of this case, 1:88-cv-00097, to the United States in accordance with Section VIII (Submissions) of this Consent Decree.

## VII. STIPULATED PENALTIES

13.     In the event that Settling Defendant violates any of the requirements listed in subparagraphs (a) - (d) below, Settling Defendant shall pay a stipulated penalty, per day, per violation, according to the schedule below. However, stipulated penalties will accrue, but will not be assessed for payment, until the completion of the closure related obligations in Paragraphs 7-9 and 11 of this Consent Decree.

### SCHEDULE:

a.     $50 per day for each day that payment of the civil penalty in Paragraph 12 is late.

b.     $50 per day for failure to record the Restrictive Covenant pursuant to Paragraph 7.

c.     $50 per day for the first 60 days for failure to implement the Work Plans pursuant to Paragraph 11.

d.     $100 per day after 60 days for failure to implement the Work Plans pursuant to Paragraph 11.

14.     All stipulated penalties begin to accrue on the day following the day on which complete performance is due or a violation occurs, and continue to accrue through the day performance is completed or the violation is corrected. Stipulated penalties shall be assessed for payment as provided in Paragraph 13. However, stipulated penalties shall not accrue: (1) with respect to Plaintiffs' resolution of a dispute under Paragraph 29 of Section XII (Dispute

Resolution) during the period, if any, beginning on the 21st day after the date that Plaintiffs have received Settling Defendant's written notice of dispute until the date that the Plaintiffs issue a final decision regarding such dispute; or (2) with respect to judicial review by this Court of any dispute under Section XII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute, until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

15.     One-half of any required stipulated penalty payment shall be tendered to the United States by EFT in accordance with Paragraph 12 or by certified or cashier's check in the amount due, payable to the "U.S. Department of Justice," referencing DOJ case number 90-7-1-433 and the United States Attorney's Office file number 1987v30931, and delivered to the Office of the United States Attorney, Western District of Michigan, Financial Litigation Unit, P.O. Box 208, 330 Ionia Ave., N.W., Suite 501, Grand Rapids, Michigan 49501-0208, within thirty (30) days after assessment for payment pursuant to Paragraph 13, or, if applicable, after resolution by the Court in accordance with Section XII (Dispute Resolution) of this Consent Decree. The other half of any required stipulated penalty payment shall be tendered to the MDEQ, Cashier's Office, P.O. Box 30657, 300 S. Washington Square, Suite 457, Lansing, Michigan 48909-8157. To ensure proper credit, all payments made pursuant to this Consent Order must include Payment Identification Number WHM 2025. A copy of the transmittal documents and the checks shall be mailed to the United States and MDEQ at the addresses set forth in Section VIII (Submissions). The transmittal documents shall identify this action, the requirement of this Consent Decree with which the Settling Defendant failed to comply, the date(s) of non-

compliance, and the amount of payment.

16.    The stipulated penalties set forth above shall be in addition to any other remedies or sanctions, including contempt proceedings, which may be available to the Plaintiff(s) by reason of the Settling Defendant's failure to comply with the requirements of this Consent Decree, RCRA, Part 111 of NREPA, or any other federal or state law or regulation.

17.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that has accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse the Settling Defendant from payment of the civil penalty as required by Section VI or for performance of any other requirement of this Consent Decree.

18.    Settling Defendant may dispute the imposition of stipulated penalties by invoking the dispute resolution procedures under Section XII of this Consent Decree, but such penalties shall continue to accrue during the pendency of a dispute, unless the Court orders otherwise.

## VIII. SUBMISSIONS

19.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, RCRA Enforcement Branch (DRE-8J)
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604

Susan W. Prout (C-14J)
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL  60604
(cover letter only)


W. Francesca Ferguson
Assistant United States Attorney
Office of United States Attorney for
the Western District of Michigan
P.O. Box 208
Grand Rapids, MI  49501-0208
(cover letter and penalty payments only)


Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044
(cover letter only)


To the State:

Andrew Hogarth, Chief
Remediation and Redevelopment Division
Michigan Department of Environmental Quality
Constitution Hall, 4th Floor South
P.O. Box 30426
Lansing, MI  48909


George Bruchmann, Chief
Waste and Hazardous Materials Division
Michigan Department of Environmental Quality
P.O. Box 30241
Lansing, MI  48909

To the Settling Defendant:

John Dunn
Warner, Norcross & Judd
900 Fifth Third Center
111 Lyon NW
Grand Rapids, MI 49503

20.     Delivery shall be considered complete upon deposit of the document(s) or other required item(s) in the U.S. mail, certified mail with return receipt requested, or with a reputable delivery service.

21.     All plans required by this Consent Decree shall become enforceable requirements of this Consent Decree upon approval by MDEQ and written notification of approval to the Settling Defendant.

## IX. ACCESS TO THE KHI FACILITY AND SAMPLING

22.     Until this Consent Decree is terminated pursuant to Section XXII (Termination), Settling Defendant agrees to provide U.S. EPA, MDEQ, their authorized representatives, and their contractors, access to the KHI Facility at all reasonable times for the purposes of inspecting, sampling, and evaluating compliance with the provisions of this Consent Decree, RCRA, and Part 111 of NREPA, including the right to photograph the KHI Facility, and review and copy sampling data and/or other records. In addition, laboratories used by the Settling Defendant or its contractors, agents, and other authorized representatives, shall be required by Settling Defendant to allow U.S. EPA, MDEQ, their authorized representatives, and their contractors to inspect these laboratories at all reasonable times. The Parties shall have the right to take splits of any samples taken in connection with the implementation of the Work Plans and this Consent Decree. Settling Defendant shall give U.S. EPA and MDEQ at least fourteen (14)

days notice prior to any groundwater sampling, and a minimum of two (2) days notice for any other sampling. Settling Defendant shall provide MDEQ with the results of all analyses within thirty (30) days after receiving the results from the laboratory.

23.    This Section does not limit any right of entry available to U.S. EPA and MDEQ pursuant to applicable federal or state laws, regulations, or permits, including, but not limited to, Section 3007 of RCRA, 42 U.S.C. § 6927, and Section 11146 of Part 111 of NREPA, Mich. Comp. Laws § 324.11146.

## X. **REPORTING**

24.    Settling Defendant shall submit to U.S. EPA and MDEQ the reports required by the Work Plans pursuant to the schedules described therein.

## XI. **MODIFICATION**

25.    No requirement or provision of this Consent Decree shall be modified or revised except upon written agreement of the Parties and a subsequent order of this Court.

## XII. **DISPUTE RESOLUTION**

26.    The dispute resolution procedures in this Section shall be the exclusive mechanism to resolve disputes or differences of opinion relating to the conduct of activities under this Consent Decree. In the first instance, the Parties shall use their best efforts to resolve informally and in good faith all such disputes. If, however, disputes arise concerning this Consent Decree, including, but not limited to, the implementation of the Work Plans, approval of documents, scheduling of any Work, or any other obligations assumed under this Consent Decree that the Parties are unable to resolve informally, the Settling Defendant shall present a written notice of such dispute to the Plaintiffs within twenty (20) days of its knowledge of the

16

dispute. The written notice of dispute shall set forth the specific points of dispute, the position of the Settling Defendant and the basis therefore, and any actions that the Settling Defendant considers necessary to resolve the dispute.

27. Within twenty (20) days of receipt of a written notice from the Settling Defendant pursuant to Paragraph 26 above, Plaintiffs shall provide a written response to the Settling Defendant setting forth their position and the basis therefore. During the time period between receipt of the written notice from the Settling Defendant and issuance of Plaintiffs' written response, the Parties shall attempt to negotiate in good faith a resolution of the differences. This 20-day period may be extended by mutual written agreement of the Parties. MDEQ, in consultation with U.S. EPA, will issue the Plaintiffs' position on technical or regulatory issues for which MDEQ is authorized. In all other instances, U.S. EPA, in consultation with MDEQ, will present the Plaintiffs' position in disputes.

28. Following expiration of the time period described in Paragraph 27 above, if Plaintiffs concur with the position of the Settling Defendant, the dispute shall be deemed resolved in favor of the Settling Defendant. The Settling Defendant shall be provided with written notification of such dispute resolution, and this Consent Decree will be modified pursuant to Section XI (Modification) as necessary. No stipulated penalties will be due under these circumstances.

29. Following expiration of the time period described in Paragraph 27 above, if Plaintiff(s) do not concur with the position of the Settling Defendant, Plaintiff(s) shall resolve the dispute, based upon and consistent with the terms and objectives of this Consent Decree, and shall provide a written statement of the dispute resolution. Subject to Paragraph 32, Plaintiffs

written statement of dispute resolution shall be incorporated into this Consent Decree pursuant to Section XI (Modification).

30.     During the pendency of the dispute resolution procedures set forth in this Section, the time period for completion of Work and/or obligations to be performed under this Consent Decree, which are affected by such dispute, may be extended, upon written agreement of the Parties, for a period of time not to exceed the actual time taken to resolve the dispute. Elements of the Work and/or obligations not affected by the dispute shall be completed in accordance with the schedules contained in the Work Plans or this Consent Decree.

31.     Upon resolution by Plaintiff(s) of any dispute, whether informally or using the procedures of Paragraphs 27-29 of this Section, the Settling Defendant shall proceed with the Work and other obligations under this Consent Decree according to the statement of resolution which shall be incorporated into this Consent Decree pursuant to Section XI (Modification), unless Settling Defendant seeks judicial review in accordance with Paragraph 32.

32.     Within fifteen (15) days after receipt of Plaintiffs' written response under Paragraph 27, Settling Defendant may file a petition for resolution with the Court setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to insure orderly implementation of this Consent Decree. The filing of a petition asking the Court to resolve a dispute shall not of itself extend or postpone any Work or other obligation of Settling Defendant under this Consent Decree. Notwithstanding the invocation of dispute resolution, stipulated penalties shall accrue from the first day of any failure or refusal to comply with any term or condition of this Consent Decree, unless the Court orders otherwise or Settling Defendant prevails in the dispute. In

proceedings on any dispute, the following standards of record review shall apply:

a.　　as to any scientific or engineering aspects of any disputed issue relating to Plaintiffs' non-approval or conditional approval of an amended Closure or Post-Closure Plan, or the Work Plans, or other document/authorization requiring, as a matter of law, U.S. EPA review and approval, the appropriate standard shall be whether the Plaintiffs' position and/or reasoning are arbitrary, capricious, or contrary to law based on the administrative record;

b.　　as to all other disputed matters brought before the Court for review, the appropriate standard shall be determined by applicable law.

For purposes of record review, the record shall consist of this Consent Decree, all documents prepared by the Parties in accordance with their obligations or responsibilities under the Consent Decree prior to the dispute, the Settling Defendant's written submissions, Plaintiffs' written responses, and all other written communications between the Parties during the period of dispute negotiation and dispute resolution, including all attachments to such written notices, responses, and communications.

## XIII. FORCE MAJEURE

33.　　"Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendant or any entity controlled by the Settling Defendant, including, but not limited to, its contractors and subcontractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation.  The requirement that the Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and to address the effects of any such event (a) as it is occurring

and (b) after it has occurred, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include Settling Defendant's financial inability to complete the Work or normal precipitation events, provided, however, that exhaustion of the Escrowed Funds may provide the basis for termination of this Consent Decree pursuant to Paragraph 50.c.

34.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendant shall notify U.S. EPA and the MDEQ in writing, as provided in Section VIII (Submissions), within seven (7) days after Settling Defendant first knew, or by the exercise of due diligence should have known, that the event might cause a delay. Such notification shall include an explanation and description of the reasons for the delay; the anticipated duration of the delay; a description of all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendant's rationale for attributing such delay to a force majeure event, if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment. The Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to force majeure. Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of force majeure for that event. Settling Defendant shall be deemed to have notice of any circumstance about which any entity controlled by the Settling Defendant had or should have had notice. If Settling Defendant is unable to complete any part or all of the work in accordance with Section V (Compliance Requirements) or otherwise to comply with any provision of this

Consent Decree, including the Plan, as a result of any circumstance, whether or not such circumstance constitutes a force majeure event, the aforementioned notice requirements shall still apply. Such notification shall be promptly supplemented as additional information becomes available to Settling Defendant concerning the circumstances of the delay, measures taken or to be taken in response to the delay, revised schedules, and the basis for Settling Defendant's claim of force majeure. Settling Defendant shall adopt all reasonable measures to avoid or minimize any such delay. Notification of any delay, in and of itself, shall not extend the time allowed for meeting any requirement or excuse the delay or payment of stipulated penalties.

35. If the Parties agree that Settling Defendant could not have prevented or mitigated any delay, or anticipated delay, attributable to a force majeure event by the exercise of best efforts, the Parties shall stipulate to an extension of time for Settling Defendant's performance of the affected compliance requirement by a period not exceeding the delay actually caused by such event. Where the extension of time constitutes a material modification to a term of this Consent Decree or is a material modification of any appendix to this Consent Decree, the appropriate modification shall be made pursuant to Section XI (Modification). An extension of time for performance of the obligations affected by a force majeure event shall not, of itself, extend the time for performance of any other obligation.

36. In the event the Parties cannot agree that Settling Defendant could not have prevented or mitigated any delay, or anticipated delay, attributable to a force majeure event by the exercise of best efforts, the matter shall be resolved in accordance with Section XII (Dispute Resolution). Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence its claim that an event constituted a force majeure event; that Settling Defendant

21

gave notice required by Paragraph 34; that Settling Defendant exercised best efforts to avoid and mitigate the effects of any delay caused by the event; and that any period of delay it claims was attributable to the force majeure event was caused by that event. If the Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to Plaintiffs and the Court.

## XIV.  COVENANT NOT TO SUE BY PLAINTIFFS

37.    In consideration of the actions that will be performed and the payment that will be made by the Settling Defendant under the terms of this Consent Decree, and except as specifically provided in Section XV (Reservation of Rights by Plaintiffs), Plaintiffs covenant not to sue or take administrative action against Settling Defendant pursuant to 40 C.F.R. Part 265 Subpart G and Sections 3008 and 7003 of RCRA, 42 U.S.C. §§ 6928 and 6973, and Part 111 of NREPA for closure and corrective action related obligations at the KHI Facility, and Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Part 201 of NREPA with respect to Existing Contamination at the KHI Facility.

38.    The covenants not to sue in Paragraph 37 shall take effect upon payment of the civil penalty pursuant to Paragraph 12 of this Consent Decree. These covenants are contingent upon the Settling Defendant's satisfactory compliance with its obligations under this Consent Decree. These covenants not to sue extend only to Settling Defendant and do not extend to any other person.

## XV.  RESERVATION OF RIGHTS BY PLAINTIFFS

39.     The covenants not to sue set forth in Paragraph 37 do not pertain to any matters other than those expressly specified therein.  The Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all other matters, including, but not limited to:

      a.     claims based on a failure of Settling Defendant to meet a requirement of this Consent Decree;

      b.     liability arising from the past, present, or future disposal, release or threat of release of Waste Material occurring at a facility other than the KHI Facility, but involving Waste Material originating from the KHI Facility;

      c.     liability arising from exacerbation by Settling Defendant, its successors, assignees, contractors, subcontractors, representatives, lessees or sub-lessees, of Existing Contamination;

      d.     liability arising from the release or threat of release of Waste Material not within the definition of Existing Contamination at the KHI Facility after the effective date of this Consent Decree;

      e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      f.     criminal liability; and

      g.     liability for violations of federal, state, or local law that occur after entry of this Consent Decree.

40.     The United States and the State reserve all legal and equitable remedies to address

23

any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the KHI Facility for Waste Material not included in the definition of Existing Contamination.

## XVI. COVENANT NOT TO SUE BY SETTLING DEFENDANT

41.     The Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including, but not limited to:

a.     any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of federal law;

b.     any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c.     any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

42.     The Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the State, or its contractors or employees, with respect to the Site or this Consent Decree, including, but not limited to any claims against any State hazardous substance fund under Part 111 of NREPA, Part 201 of NREPA, or other State laws.

43.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a CERCLA claim within the meaning of 40 C.F.R. § 300.700.

## XVII. <u>CONTRIBUTION PROTECTION</u>

44.     The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or any other provision of law for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, subject to the United States' Reservation of Rights in Section XV of this Consent Decree.

45.     The Settling Defendant agrees that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify the United States and the State in writing within ten (10) days of service of the complaint or claim upon it. In addition, the Settling Defendant shall notify the United States and the State within ten (10) days of service or receipt of any motion for summary judgment, and within ten (10) days of receipt of any order from any court setting a case for trial, for matters related to this Consent Decree.

## XVIII. <u>SEVERABILITY</u>

46.     It is the intent of the Parties that the provisions of this Consent Decree are severable and that if any provision is declared by a court of competent jurisdiction to be invalid and unenforceable, the remaining provisions shall continue in full force and effect.

## XIX. <u>PUBLIC COMMENT</u>

47.     The Parties agree and acknowledge that final approval by the United States and

entry of this Consent Decree is subject to the public notice and comment requirements of 28 C.F.R. § 50.7. The United States reserves the right to withhold or withdraw its consent to entry of this Consent Decree if comments received disclose facts that lead the United States to conclude that the proposed Consent Decree is inappropriate, improper, or inadequate.

## XX. CONTINUING JURISDICTION OF THE COURT

48.     The Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising under it as may be necessary or appropriate for the construction or execution of this Consent Decree.

## XXI. INTEGRATION / APPENDICES

49.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

Appendix A     Operation & Maintenance Plan and Compliance Monitoring Contingency Plan;

Appendix B     Legal Description of the KHI Facility;

Appendix C     Agreement and Covenant Not to Sue;

Appendix D     Restrictive Covenant;

Appendix E     Environmental Escrow Agreement.

## XXII. TERMINATION

50.     This Consent Decree shall terminate when any of the following occur:

a.     Settling Defendant has fully complied with all the terms of this Consent

Decree as evidenced by a stipulation of the Parties filed with the Court;

b.  upon further order of the Court, after proper motion and notice of hearing by any Party; or

c.  sixty (60) days after receipt by Plaintiffs and the Court of written notice by Settling Defendant, supported by documentation, that the Escrowed Funds have been exhausted and there will be no further deposits into the Escrow Account from tax refunds, provided that neither Plaintiff files with the Court and serves upon Settling Defendant a written objection to such termination during that sixty (60) day period.

If either Plaintiff files such an objection, the Court shall treat the notice of exhaustion of the Escrowed Funds as a motion for termination of the Consent Decree and shall hold a hearing upon such motion.

SO ORDERED THIS __29th___ DAY OF ___June_____, 2006.

/s/ Robert Holmes Bell
ROBERT HOLMES BELL
CHIEF UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States and the State of Michigan v. FMB--First Michigan Bank, or Its Successor, as Trustee of the Mary A. Windolph Trust</u>, Civil Action No. 1:88-cv-00097 (W.D. Mich.), relating to the KHI Facility in Holland, Michigan.

FOR THE UNITED STATES OF AMERICA

Date: _10 May 2006_

_____
W. BENJAMIN FISHEROW
Deputy Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

_____
JENNIFER A. LUKAS-JACKSON
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

MARGARET M. CHIARA
United States Attorney
Western District of Michigan

W. FRANCESCA FERGUSON
Assistant United States Attorney
United States Attorney's Office
P.O. Box 208
Grand Rapids, MI 49501-0208

28

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States and the State of Michigan v. FMB--First Michigan Bank, or Its Successor, as Trustee of the Mary A. Windolph Trust</u>, Civil Action No. 1:88-cv-00097 (W.D. Mich.), relating to the KHI Facility in Holland, Michigan.

FOR THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY

Date: ___5/5/06___

BHARAT MATHUR
Acting Regional Administrator (R-19J)
U.S. Environmental Protection Agency
Region 5
77 West Jackson
Chicago, IL 60604

SUSAN W. PROUT
Associate Regional Counsel (C-14J)
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, IL 60604

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States</u> <u>and the State of Michigan v. FMB--First Michigan Bank, or Its Successor, as Trustee of the</u> <u>Mary A. Windolph Trust</u>, Civil Action No. 1:88-cv-00097 (W.D. Mich.), relating to the KHI Facility in Holland, Michigan.

FOR THE STATE OF MICHIGAN

MICHAEL A. COX
Attorney General

Date: May 3, 2006

PAMELA L. STEVENSON
Assistant Attorney General
State of Michigan
Department of Attorney General
P.O. Box 30755
Lansing, MI 48909

Date: Apr. 27, 2006

GEORGE BRUCHMANN
Chief, Waste and Hazardous Materials Division
Michigan Department of Environmental Quality
Constitution Hall, Atrium North
P.O. Box 30241
Lansing, MI 48909-7741

30

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States and the State of Michigan v. FMB--First Michigan Bank, or Its Successor, as Trustee of the Mary A. Windolph Trust</u>, Civil Action No. 1:88-cv-00097 (W.D. Mich.), relating to the KHI Facility in Holland, Michigan.

FOR HUNTINGTON NATIONAL BANK,
AS SUCCESSOR TO FMB--FIRST
MICHIGAN BANK, AS TRUSTEE OF THE
MARY A. WINDOLPH TRUST

Date: _____3|27|06_____

_____
A Vice President , BRAD LATOUR

Date: ____4-4-06____

_____
JOHN DUNN
Warner, Norcross & Judd
900 Fifth Third Center
111 Lyon NW
Grand Rapids, MI 49503

31